[Civ. No. 48451. First Dist., Div. Two. Dec. 18, 1981.]

PMI MORTGAGE INSURANCE COMPANY et al., Plaintiffs and Appellants, v.
CITY OF PACIFIC GROVE et al., Defendants and Appellants.

COUNSEL

David M. Hollingsworth for Plaintiffs and Appellants.

Theodore G. Morris for Defendants and Appellants.

OPINION

**TAYLOR, P. J.**—The City of Pacific Grove, its city council and planning commission (collectively City) appeal from a judgment granting a writ of mandate commanding the city council to grant a zoning variance to PMI Mortgage Insurance Company (PMI) and Richard C. and Barbara Morrow (Morrow) to permit a lot split of their contiguous lots into two separate building sites. PMI and Morrow cross-appeal from that part of the judgment denying their request for declaratory relief.

For the reasons set forth below, we have concluded that the judgment must be reversed.

As we have concluded that the judgment was based on errors of law, we shall not set forth the trial court's findings. We trace the factual and procedural history in the light of the administrative record and the briefs and pleadings of the parties.

The properties in issue are located in a unique subdivision recognized by Municipal Code section 23.57.010. The subdivision is bounded by Lorelei Street on the east, Ocean View Boulevard on the north, Sea Palm Avenue on the west and property abutting Mermaid Avenue and the southerly side of Mermaid Avenue, a tract which is approximately 130 feet wide and 1,300 feet in length stretching along Monterey Bay. This area was subdivided prior to subdivision or zoning restrictions with mainly 20 by 44 foot lots. Around 100 of these lots are in existence and held in varying combinations of ownership, including a small number of 880 square foot sites improved with residences and a goodly number of 1,760 square foot sites also improved with single family residences.

Since 1973, the City's ordinance has required a minimum building site of 4,000 square feet in this district and 2,500 square feet of land for each family unit in a building. In 1973, Samuels owned all three of the lots[1] as a single building site containing 2,640 square feet, then improved with a residence occupying lots 37 and 38, while lot 36 was vacant.

In 1973, Samuels obtained a variance from the requirements of 2,500 square feet per building unit in a multiple dwelling, and from the front and side setback requirements. Samuels built the second structure, which now occupies lot 36. Samuels was informed by the City that because of the merger, he could not sell separately either the old house on lots 37 and 38 or the new house on lot 36. In 1975, Samuels was denied a variance to sell lot 36 separately from lots 37 and 38. Nevertheless, after 1975, the ownership of lot 36 was separated from lots 37 and 38. PMI owns lot 36; Morrow, lots 37 and 38.

---

[1] Municipal Code section 23.64.140 provided that where contiguous substandard lots were owned by one person, they merged into only one legal building site up to the minimum square footage then required. The merger did away with the provision of the ordinance that permitted a noncomforming use, i.e., building on an undersized lot that was a lot of record in 1952 and not since 1952 a part of a larger holding.

The net effect of the City ordinance was to make the parcels acquired by PMI and Morrow illegal building sites. If the present structures were demolished, the present owners could not replace them; the structures could be replaced, with a variance first obtained, if both parcels were reunited under one ownership.

Subsequently Morrow and PMI applied to the planning commission for the following variances:

1) From the minimum building site of 4,000 square feet required by section 23.57.040 of the ordinance so that Morrow could maintain a 1,760 square foot building site on lots 37 and 38 (779 Mermaid) and PMI, a 880 square foot building site on lot 36 (777 Mermaid);

2) From the minimum three foot side yard provision required by section 23.57.060B on the west side of lot 36.

The planning commission denied Morrow and PMI's request for a variance. Morrow and PMI appealed to the city council which received the report of the planning commission, including past attempts to obtain an identical variance. After a hearing in January 1979, the city council made findings and sustained the planning commission's denial of the variance requested.

Thereafter, Morrow and PMI filed the instant petition seeking a writ of mandate pursuant to Code of Civil Procedure section 1094.5 and declaratory relief. At the hearing, over the City's objection, the court admitted into evidence and considered documentary and other evidence that had not been considered by the city council.[2] The court then independently reviewed the evidence and found that the City was aware of the merger, restrictions and the variances granted to Samuels in 1973. The court also found that Morrow and PMI were bona fide purchasers. The court concluded that, therefore, the City was estopped as a matter of law from denying the variance here requested. The court further concluded that the city council's decision was not supported by substantial evidence and that there was no evidence to support the cause of action for declaratory relief. The court then entered its judgment directing the city council to grant the variance.

---

[2]The court indicated that the declaratory relief cause of action and pleading of estoppel justified the admission of the additional evidence and denied the City's request for a separate trial on the declaratory relief issues.

We turn first to the statute that prescribes the standard of review. Code of Civil Procedure section 1094.5 applies to the review of variances; subdivision (c) of the statute states that an abuse of discretion occurs whenever the defendant has not proceeded in the manner provided by law, when the order or decision is not supported by findings, or when findings are not supported by the evidence (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514 [113 Cal.Rptr. 836, 522 P.2d 12]).

Subdivision (c) provides two tests for review of the evidence in abuse of discretion cases: the independent judgment rule and the substantial evidence rule. Unless a fundamental vested right is involved, the substantial evidence test is to be applied both by the trial court and the appellate court (*Topanga Assn., supra*, 11 Cal.3d 506, 510; *City of Carmel-by-the Sea* v. *Board of Supervisors* (1977) 71 Cal.App.3d 84, 91 [139 Cal.Rptr. 214]). Cases involving abuse of discretion charges in the area of land use regulation do not involve fundamental vested rights (*Topanga, supra*, 11 Cal.3d p. 510, fn. 8 at p. 512; *Flagstad* v. *City of San Mateo* (1957) 156 Cal.App.2d 138 [318 P.2d 825]; *Carmel-by-the Sea, supra*, 71 Cal.App.3d p. 91). Usually, no vested right is affected by either the denial or granting of a variance[3] (*Flagstad, supra*, 156 Cal.App.2d 138; cf. *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 137 [164 Cal.Rptr. 539, 610 P.2d 436]).

Under Code of Civil Procedure section 1094.5, subdivision (d), under either method of review, augmentation of the record is proper in two, and only two, cases: (1) where the evidence could not, in the exercise of reasonable diligence, have been produced at the administrative hearing and (2) where relevant evidence was improperly excluded by the administrative agency (*Hadley* v. *City of Ontario* (1974) 43 Cal. App.3d 121 [117 Cal.Rptr. 513]). If so, subdivision (e) provides that the court can enter judgment as provided in subdivision (f) to remand

---

[3]The underlying theory is that a variance sanctions a deviation from the standard under the dispensing power of the administrative body. This authority is entirely different from a licensing power where the applicant has complied with the requirements of the law (*Rubin* v. *Board of Directors* (1940) 16 Cal.2d 119, 124 [104 P.2d 1041]). Thus, building permits where the owner has performed substantial work and incurred substantial liabilities in good faith reliance on the permit involve fundamental vested rights (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546]; *Anderson* v. *City of LaMesa* (1981) 118 Cal.App.3d 657, 660-661 [173 Cal.Rptr. 572]). Contrary to the contentions of PMI and Morrow, *Anderson, supra*, did not change the above cited general rule as to variances. As the court pointed out at page 660, once Anderson built the house in reliance on the building permit, her right was vested. Thus, the city was properly estopped from subsequently denying her a variance and occupancy permit.

for reconsideration in light of the excluded evidence. Subdivision (f) provides that the court can either command the administrative agency to set aside its judgment or deny the writ; if the court commands the decision to be set aside and reconsidered, "the judgment shall not limit or control in any way the discretion legally vested in the respondent."

Since no fundamental vested right was involved here, it follows that the trial court erred by making an independent review of the evidence and making findings. Further, since neither of the prerequisites specified by subdivision (d) for augmentation of the record was present, the court also erred by considering evidence that was not before the city council. ■ Finally, the court also erred by ordering the City to grant the variance (*Zink* v. *City of Sausalito* (1977) 70 Cal.App.3d 662, 665 [139 Cal.Rptr. 59]; *Gong* v. *City of Fremont* (1967) 250 Cal.App.2d 568, 576 [58 Cal.Rptr. 664]).

Thus, the only issues before us are whether there was substantial evidence to support the city council's findings and whether the findings support the decision (*Miller* v. *Board of Supervisors* (1981) 122 Cal. App.3d 539, fn. 3, at p. 543 [176 Cal.Rptr. 136]; *City of Walnut Creek* v. *County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1017 [162 Cal.Rptr. 224]).

We turn first to the City's argument that substantial evidence is not required, as the denial of a variance is a matter of grace and, therefore, not reviewable except for procedural irregularity. The City relies on *Rubin* v. *Board of Directors, supra,* 16 Cal.2d 119, and its progeny (*Garden Grove Congregation* v. *City of Garden Grove* (1959) 176 Cal.App.2d 136, 140 [1 Cal.Rptr. 65]; *Phil Anthony Homes, Inc.* v. *City of Anaheim* (1959) 175 Cal.App.2d 268 [346 P.2d 231]; *Tustin Heights Assn.* v. *Bd. of Supervisors* (1959) 170 Cal.App.2d 619, 634 [339 P.2d 914]). However, as we read the above authorities, they provide only the basis for the conclusion that no fundamental vested right is involved and, therefore, the appropriate standard of review is the substantial evidence standard.

We turn, therefore, to the decision of the city council. The decision recited that the only evidence offered, aside from staff responses to the council's questions, was the statement of Mr. Hollingsworth, the attorney for Morrow and PMI. He countered the city attorney's ruling that a variance cannot be used for such a drastic reduction in building site requirements from 4,000 square feet to 1,760 square feet or 880 square

feet. Hollingsworth pointed out cases of individual ownership of developed 880 square foot and 1,760 square foot parcels in the district and pleaded hardship because PMI and Morrow had unmarketable separate parcels. He also indicated that Samuels may not be available or collectible in a private suit. He thought the City was remiss for granting Samuels a variance to erect a second structure and thus owed the victims of Samuel's fraud a variance. He did not point out any case of similarly sized parcels in the district being given the privilege of the subdivision he requested.

The city council, in denying the variance, made the following findings of fact: "1. Applicants have not shown an exceptional or extraordinary circumstance or condition not generally applicable to land, buildings and/or uses in the District.

"2. The granting of the variance is not required to preserve a property right. On the contrary, it is being requested to enlarge a right or grant a right not heretofore existing.

"3. The granting of the variance will be adverse to property in the neighborhood. It will be destructive of the purposes of the ordinance in requiring 4000 square foot building sites. It would serve as a precedent by which neighboring parcels could claim the same privilege to subdivide.

"4. Applicants have failed to establish the factual evidence necessary to grant a variance."[4]

The essential requirement of a variance is a showing that a strict enforcement of the zoning limitation would cause unnecessary hardship; the burden of showing hardship is on the applicant (*Tustin Heights Assn.* v. *Bd. of Supervisors, supra,* 170 Cal.App.2d 619, 626-627). There was substantial evidence before the city council to support its

---

[4]Municipal Code section 23.72.090 provided: "Application for variance shall be made in writing on a form prescribed by the planning commission and shall be accompanied by a fee of fifty dollars and statement, plans and evidence showing:

"(a) That there are exceptional or extraordinary circumstances or conditions applying to the land, buildings or use referred to in the application, which circumstances or conditions do not apply generally to land, buildings, and/or uses in the same district;

"(b) That the granting of the application is necessary for the preservation and enjoyment of substantial property rights of the petitioner;

"(c) That the granting of such application will not, under the circumstances of the particular case, materially affect adversely the health or safety of persons residing or working in the neighborhood of the property."

findings that Morrow and PMI had not met their burden of proving hardship. No variance for an 880 square foot building site had ever been granted. PMI and Morrow were subject to the same restrictions as other property owners in the district. The variance would be destructive of the public policy reflected by the ordinance, which required 4,000 foot building sites.

We conclude that there was substantial evidence to support the findings of the city council and that its findings support its decision to deny the variance.

We note that the nature of the administrative process in this instance called for a generalized statement. The purpose of the council's findings was not to propound precise facts as in trial court findings, but rather to weigh the social and public advantages and disadvantages of granting a variance (cf. *Floresta, Inc.* v. *City Council* (1961) 190 Cal.App.2d 599, 609 [12 Cal.Rptr. 182]). ■ Estoppel will not be invoked against a government agency where it would defeat effective operation of a policy adopted to protect the public (*Pettitt* v. *City of Fresno* (1973) 34 Cal.App.3d 813, 822 [110 Cal.Rptr. 262]).

■ Finally, we note that PMI and Morrow apparently abandoned their cross-appeal from the portion of the judgment denying their cause of action for declaratory relief, predicated on the alleged unconstitutional application of the zoning. *Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 273 [157 Cal.Rptr. 372, 598 P.2d 25], affirmed 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138], established that the proper and sole remedy available was administrative mandamus. Accordingly, the denial of relief on the cause of action for declaratory relief was proper.

The judgment is reversed as to the cause of action for administrative mandamus and affirmed as to the denial of relief on the cause of action for declaratory relief; PMI and Morrow's motion for judicial notice of matters that occurred after the entry of judgment is denied. The City is awarded its costs on appeal.

Rouse, J., and Miller, J., concurred.

The petition of plaintiffs and appellants for a hearing by the Supreme Court was denied February 17, 1982.