[Civ. No. 50087. First Dist., Div. Four. Mar. 16, 1983.]

ALFRED RASMUSSEN et al., Plaintiffs and Respondents, v.
CITY COUNCIL OF THE CITY OF TIBURON,
Defendant and Appellant.

COUNSEL

Robert I. Conn, City Attorney, and Gary T. Ragghianti, Deputy City Attorney, for Defendant and Appellant.

James B. McKenney for Plaintiffs and Respondents.

OPINION

**CHRISTIAN, J.**—The City Council of the City of Tiburon appeals from a judgment for issuance of a writ to require approval of an application by respondents Alfred and Ket Rasmussen for permission to convert their five-unit apartment building to a condominium. We reverse the judgment.

In 1974, the city council amended the Tiburon zoning ordinance to provide for regulation of the conversion of rental apartments to condominium units. The amended ordinance requires the planning commission not to grant a permit for a condominium project unless the property conforms to zoning and building code standards and the proposal is compatible with the General Plan of the City of Tiburon.

Respondents' property here in question is a five-unit apartment house built in 1972-1973. Pursuant to the conversion ordinance, they formally applied to the planning commission for a permit. Martha McCart, city director of community development, submitted to the planning commission an analysis of the proposed conversion, advising that the proposal conformed to the housing element of the general plan, would have no negative environmental impact, and would not adversely affect adjacent properties. The site did contain only 3,480 square feet per unit rather than the 3,500 square feet required by the zoning ordinance; in other respects, siting and landscaping appeared adequate. McCart withheld any recommendation regarding disposition of the application pending receipt of detailed floor plans and engineering studies from respondents, an inspection report from the building department, and the results of noise tests to be made by an acoustician. McCart later submitted to the planning commission a supplemental report indicating that although the building met zoning requirements in effect at the time of construction it did not conform to the existing ordinance. The building exceeded the height limit by 9.2 feet and the lot coverage maximum by 8 percent; also, the rear and side yards failed to meet present setback standards. The acoustician found that the uncarpeted areas of the units—kitchens, bathrooms and entries—did not satisfy sound transmission requirements. The building inspector had found six code violations but suggested these could be corrected. McCart recommended that, due to the noted deficiencies, the commission deny the application.

After preliminary discussion, the commission asked McCart to report on the treatment of prior applications for conversion of buildings deficient in the same respects. McCart reported: "It appears that buildings have been converted in the past with zoning variances, but that the Commission must determine whether or not the intent of the ordinance concerning conversion of existing apartments to condominiums has been met." She continued that the acoustic problems and building code violations were probably correctible; however, she cautioned against approval: "Staff still recommends against the conversion of these units because of the types of units (essentially apartments) that they are. The closeness of the adjoining buildings, generally limited access and other considerations make these less desirable condominiums from the zoning standpoint."

McCart also warned that "this building was virtually identical with a number of others in the Harbor Hill/Red Hill area which were clearly apartments, and that the approval of this application could set a precedent."

A representative of the owners stated any building code violations would be corrected and that the departures from zoning requirements were too insubstantial to bar the conversion.

The commissioners discussed the subject of access to the building. McCart stated that "access was via a private driveway which crossed two other properties, and served a total of about 15 units." After further discussion, the commission denied respondents' application on the basis of the following findings:

"The proposed Condominium does not meet the requirements of the Tiburon Zoning Ordinance and Chapter 13 of the Muncipal Code for multiple dwelling units as follows:

"1. Several zoning variances, to wit: side and rear yard setbacks, height, are in evidence, and significantly reduce the livability of the building from the single family standards required by Section 10-7.1 of the Zoning Ordinance.

"2. Access to the building is provided by a private driveway crossing over two other properties to reach the subject units, in violation of Resolution No. 134 of the City Council requiring that no more than three dwelling units may be served by a private road or driveway.

"3. The siting of the building is such to make it more suitable as an apartment than as single family residences as intended by the Condominium Conversion provisions of Section 10-7.1 of the Tiburon Zoning Ordinance."

The commission also found that the proposed conversion would be "detrimental to the public welfare, injurious to property or improvements in said neighborhood, or adversely affect the general zoning plan of the City."

Respondents appealed to the city council. The city manager submitted a report recommending that the council uphold the planning commission's determination. "It appeared to staff, and to the Commission, that the intent of the Condominium Conversion Ordinance, as stated in Section 10-7 of the Zoning Ordinance, is to only allow the conversion of those units which closely resemble single family dwellings, and provide a comparable level of amenities for the owners. This building, while recently built, was crowded on its site, provided inadequate access and circulation, and did not have adequate setbacks from neighboring buildings." The report also noted the evidence that the building exceeded current height limitations.

At a public hearing the city council heard the testimony of respondent Ket Rasmussen and her engineer, Martin. Martin stated that the amenities in the units were superior to those ordinarily found in apartments. He stated that although the building was served by a private driveway its conversion from rental to condominium housing would not affect the use of that driveway. Rasmussen related that three of her current tenants had indicated a desire to purchase their units. Further, several of the tenants who had moved out of the building within the past five years had ultimately purchased condominiums elsewhere in the community.

McCart urged the city council to uphold the action of the planning commission, stating that in light of the several zoning variances approval of the application would contravene the intent of the conversion ordinance. The chairman of the planning commission offered this explanation for the commission's action: "[T]he Condominium Conversion Ordinance states that any conversion must outline conditions that will most nearly approximate single-family dwellings. And our decision, of course, is based on a long-term effect. This is the apartment section of our community, and it did seem to us proper that since there were some areas that were questionable, that the building remain in an apartment classification."

The city council affirmed the planning commission decision, after adopting the commission's findings with respect to departures from the zoning ordinance, inadequate vehicular access and circulation, poor siting, and finding additionally that the structure did not meet noise standards and that conversion would adversely affect abutting properties. The council further concluded that the proposed conversion would undermine the city's long term housing policies: "The Tiburon Housing Element of the General Plan expresses the City's concern 'over the reduction of rental units within the City due to increasing conversion of rental apartment units into condominiums which are sold. This practice significantly diminishes the number of dwelling units available as rentals, and increases the difficulties for moderate income families to remain in the community.' The structure in question is located in the immediate vicinity of numerous other almost identical apartment buildings; and while the conversion of this single building might not in itself have a serious adverse impact upon the City's stock of rental units, should the conversion have the 'domino effect' which the Council fears it may, thereby creating the impetus and precedent for other conversions, the cumulative effect would have serious, and adverse, impact upon the number of rental units available in the City. For this reason, the Council finds that the conversion would violate the housing element of the Tiburon General Plan and further finds that the proposed use is not properly located in relation to the community as a whole."

The owners sought a writ to annul the action of the city council. The petition was submitted on the administrative record. The court, applying independent judgment, found that the findings stated in the council's resolution were incorrect.

In administrative mandamus proceedings under Code of Civil Procedure section 1094.5, a court, where "authorized by law," exercises its independent judgment in reviewing the record; "in all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).) ■ A court is authorized by law to exercise independent judgment wherever the administrative decision substantially affects a "fundamental vested right." (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395-396 [188 Cal.Rptr. 891, 657 P.2d 383]; *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143-144 [93 Cal.Rptr. 234, 481 P.2d 242].) Generally, an application by a landowner for an exercise of administrative discretion in the area of land use regulation does not implicate fundamental vested rights. (See *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 510, fn. 1 [113 Cal.Rptr. 836, 522 P.2d 12]; *PMI Mortgage Ins. Co.* v. *City of Pacific Grove* (1981) 128 Cal.App.3d 724, 729 [179 Cal.Rptr. 185]; *City of Walnut Creek* v. *County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1016 [162 Cal.Rptr. 224]; *McMillan* v. *American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 182, fn. 7 [131 Cal.Rptr. 462].) Thus, this court held, in *Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 842-845 [130 Cal.Rptr. 169], a property owner enjoyed no vested right to subdivide and improve his land where he had not obtained and relied upon all the necessary government permits before commencing the project. (See also *South Central Coast Regional Com.* v. *Charles A. Pratt Construction Co.* (1982) 128 Cal.App.3d 830, 841-847 [180 Cal.Rptr. 555].) In contrast, where "a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit." (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546], cert. den. and app. dism. (1977) 429 U.S. 1083 [51 L.Ed.2d 529, 97 S.Ct. 1089]; *Anderson* v. *City of La Mesa* (1981) 118 Cal.App.3d 657, 660 [173 Cal.Rptr. 572].) ■ Accordingly, the Court of Appeal held in *Krater* v. *City of Los Angeles* (1982) 130 Cal.App.3d 839, 843-844 [181 Cal.Rptr. 923], that denial of a property owner's application to convert apartment units to condominiums affects no fundamental vested rights. *Krater* is directly on point and is consistent with the body of case law pertaining to other land use regulatory decisions. As no fundamental vested

right was involved; the trial court erred when it applied the independent judgment rather than the substantial evidence standard.

■ Where no fundamental vested right is affected, "the appellate court itself reviews the administrative record to determine whether the agency's decision was supported by substantial evidence." (*Patterson* v. *Central Coast Regional Com., supra,* 58 Cal.App.3d 833, 842.) ■ Respondents submit that even under this standard the denial of their conversion application constituted an abuse of discretion.

Rules governing condominium conversion permits are found in section 10-7.1 of the Tiburon Zoning Ordinance. Subdivision C provides: "Such permit shall be issued by the Planning Commission only if it determines that the property conforms to all applicable zoning regulations and if it makes the findings required by this section." The building here in question failed to conform to current zoning laws in at least four respects—height, lot area per dwelling unit, lot coverage and setbacks. (Respondents assert there is "difficulty" in finding support in the record for the latter two findings. Both are reported in the staff analysis of the floor plans and engineering studies dated Dec. 7, 1977.) The trial court reasoned that the city council was "not quite correct" in finding noncompliance with zoning laws since "the property would conform to existing zoning regulations were a variance to be granted by the Board of Adjustments and Review." In its peremptory writ the court directed the city council to set aside denial of the permit, allow respondents a "reasonable opportunity to obtain a variance," and then reconsider the application. In two respects the possible availability of variances does not render the city council's action an abuse of discretion.

First, at the time the commission and the council acted upon the application, respondents did not possess variances covering the deviations from current zoning regulations. Although there was evidence that in 1972 city officials had informed respondents that no variance was required regarding the setback problems created by the carport, respondents offered no explanation for their failure to obtain variances covering the remaining deviations. Even if conformity to "all applicable zoning regulations" is interpreted to embrace uses permitted by variances, respondents' property was not in compliance at the time the city council considered the matter.

Second, the court's holding misconstrues the nature of a variance. "The underlying theory is that a variance sanctions a deviation from the standard under the dispensing power of the administrative body." (*PMI Mortgage Ins. Co.* v. *City of Pacific Grove, supra,* 128 Cal.App.3d 724, 729, fn. 3.) A variance does not "conform" a property to "existing" zoning law as stated by the court. It excuses noncompliance so that the nonconforming use is not sub-

ject to abatement or the owner to penalty. An examination of the conversion ordinance as a whole supports a restrictive interpretation of the "all applicable zoning regulations" language. The ordinance begins with a recitation of legislative findings that "condominium and community apartments differ from apartments in numerous respects, and the public health, safety and welfare require that condominium projects be treated differently from apartments." (Subd. B.) Standards for conversion are stated in the form of limitations upon the planning commission's authority to permit conversions rather than restrictions upon its discretion to deny them (e.g., "Such permit shall be issued . . . only if . . ." and "No condominium permit shall be approved . . . unless" [subds. C and E]). Even where the property meets zoning and building code standards, the planning commission must determine that the proposed conversion is consistent with the general plan and with the various neighborhood development policy considerations described in section 21 of the zoning ordinance. The condominium ordinance clearly evinces an intent to pull in the reins on the conversion of rental units to condominiums.

The owner of a nonconforming apartment house may, upon an appropriate showing of hardship, obtain a variance from the board of adjustments and review and continue to operate his building as rental housing. (Tiburon Zoning Ord., §§ 17-20.) The interpretation urged by respondents and adopted by the trial court would effectively eliminate an important aspect of the disparate treatment between apartments and condominiums expressly contemplated in the ordinance. An owner would be entitled to convert to condominiums any nonconforming building lawfully operated as an apartment house. Conversion to condominiums, like continuation of the existing use, would depend only upon the issuance of a variance. Such an outcome would be contrary to the general rule stated in section 15 of the Tiburon Zoning Ordinance. A building which complied with zoning laws in effect at the time of its construction may continue as a "lawful non-conforming use or structure" despite an intervening change in land use regulations. However, "[u]nless it is made to comply in its entirety with the provisions of the ordinance, a non-conforming use may not be; . . . 2. changed to another use . . . ." (§ 15, subd. C.) There is no legislative indication that a different rule should govern the more specific condominium conversion ordinance. The city council reasonably concluded that a lawful nonconforming use did not necessarily satisfy the requirement of section 10-7.1, subdivision C, of conformity to "all applicable zoning regulations."

The commission concluded that approval of a permit for a nonconforming building "in the immediate vicinity of numerous other almost identical apartment buildings" could set a dangerous precedent "creating an impetus . . . for other conversions" and thereby adversely affecting the mix between condominium and rental housing units. This factor was properly to be considered

by the council as the conversion ordinance requires evaluation of the compatibility of a condominium proposal with section 21 of the zoning ordinance and with the general plan. Section 21, subdivision B(1), directs determination of whether a proposed land use is "properly related to the development of the neighborhood as a whole" and "reasonably compatible with the types of uses normally permitted in the surrounding area." Similarly, the housing element of the Tiburon General Plan is concerned with the diminution of moderate income housing and specifically addresses the impact of condominium conversions. "Concerns exist over the reduction of rental units within the city due to increasing conversions of rental apartment units into condominiums, which are sold. This practice significantly diminishes the number of dwelling units available as rentals, and increases the difficulties for moderate income families to remain in the community." Evidentiary support for the city council's apprehensions of a "domino effect" is found in the discussions of this danger in the staff analysis submitted by the director of community development. An administrative body may accord weight to the reasonable projections of its professional planners. (*City of Chula Vista* v. *Superior Court* (1982) 133 Cal.App.3d 472, 491 [183 Cal.Rptr. 909]; *Coastal Southwest Dev. Corp.* v. *California Coastal Zone Conservation Com.* (1976) 55 Cal.App.3d 525, 532 [127 Cal.Rptr. 775].) *PMI Mortgage Ins. Co.* v. *City of Pacific Grove, supra,* 128 Cal.App.3d 724, is instructive with regard to consideration of the "domino effect." There, a previous owner of a land parcel, who had unlawfully subdivided it, transferred adjacent lots to the two applicants. In denying the current owners' applications for variances to excuse the noncompliance with minimum lot size requirements, the city council cited, among other factors, the danger that approval "would serve as a precedent by which neighboring parcels could claim the same privilege to subdivide." (*Id.,* at p. 731.) The appellate court reversed the judgment of the trial court granting administrative mandamus. "The variance would be destructive of the public policy reflected by the ordinance, which required 4,000 foot building sites. . . . [¶] The purpose of the council's findings was not to propound precise facts as in trial court findings, but rather to weigh the social and public advantages and disadvantages of granting a variance [citation]." (*Id.,* at p. 732.)

Contrary to the terms of the ordinance, respondents' property did not conform to all zoning regulations. The council reasonably apprehended that laxness in permitting the conversion of an apartment house which was not in full compliance would invite similar applications. Although the withdrawal from the rental market of the five units owned by these applicants might have minimal impact on housing availability, the council acted within its discretion in refraining from setting a precedent which could be destructive of the city's broad housing policies. As these factors constituted sufficient grounds for the council's action, it is unnecessary to evaluate the evidentiary support for the council's remaining findings pertaining to the adequacy of access to the units.

The judgment granting the writ of mandate is reversed.

Caldecott, P. J., and Rattigan, J., concurred.