[Civ. No. 63949. Second Dist., Div. Three. July 25, 1985.]

BLUE CHIP PROPERTIES et al., Plaintiffs and Respondents, v. PERMANENT RENT CONTROL BOARD OF THE CITY OF SANTA MONICA et al., Defendants and Appellants.

[And four other cases.]*

*Regal Properties v. Permanent Rent Control Board of the City of Santa Monica (Civ. No. 64212); Stoka v. Permanent Rent Control Board of the City of Santa Monica (Civ. No. 62957); Wissner v. Permanent Rent Control Board of the City of Santa Monica (Civ. No. 62905); Canon Investment Company v. Permanent Rent Control Board of the City of Santa Monica (Civ. No. 61619).

650

COUNSEL

Robert M. Myers, City Attorney, Stephen Shane Stark, Assistant City Attorney, Jonathan Horne, Karl M. Manheim and David Pettit, Deputy City Attorneys, Michael Heumann, Mary Ann Yurkonis, Stephen P. Wiman, Jana Zimmer and Joel Martin Levy for Defendants and Appellants.

Ira Reiner, City Attorney (Los Angeles), Gary R. Netzer and Claudia McGee Henry, Assistant City Attorneys, Sharon L. Siedorf, Deputy City Attorney, George Agnost, City Attorney (San Francisco), Alice Suet Yee Barkley, Burk E. Delventhal and Thomas J. Owen, Deputy City Attorneys, and Carolyn Burton as Amici Curiae for Defendants and Appellants.

Boren, Elperin, Howard & Sloan, William Elperin, Tamila C. Jensen, William A. Kerr, Peter A. Umoff, Carmack, Johnson & Poulson, Lynn O. Poulson, Michael C. Smith, Irell & Manella, Steven L. Sloca, Theodore E. Guth, Paul, Hastings, Janofsky & Walker, William B. Campbell, Peter K. Rosen and C. Lee Mumford for Plaintiffs and Respondents.

Paul, Hastings, Janofsky & Walker, William B. Campbell, Peter K. Rosen, C. Lee Mumford, Alexander, Inman, Tanzer & Wedemeyer, Lowell R. Wedemeyer, Latham & Watkins, Dale K. Neal, Stephen L. Jones and Roger S. Goldman as Amici Curiae for Plaintiffs and Respondents.

## OPINION

**KLEIN, P. J.**—Defendants and appellants the City of Santa Monica (City) and the Santa Monica Rent Control Board (Board) appeal several writs of mandate ordering them to grant plaintiffs and respondents Blue Chip Properties and Regal Properties (Blue Chip/Regal),[1] Peter Wissner (Wissner),[2] and Ivo and Gordana Stoka (Stoka) vested rights exemptions from obtaining rental housing removal permits required by Santa Monica Rent Control Charter Amendment (Amendment) section 1803, subdivision (t) (section 1803, subdivision (t)).

The City and the Board also appeal the issuance of a writ prohibiting application of section 1803, subdivision (t) to plaintiffs and respondents Canon Investment Company and Santa Monica Associates II (Canon).

For the reasons hereinafter discussed, the judgments are reversed.

### FACTS AND PROCEDURAL HISTORY

*Summary statement.*

In each of these cases, the apartment building owners had already reached some stage in the process of converting their property to condominiums when the City's rent control law took effect, and section 1803, subdivision

---

[1] *Blue Chip Properties* v. *Permanent Rent Control Board* and *Regal Properties* v. *Permanent Rent Control Board* were consolidated for trial and appeal as their facts are virtually identical.

[2] The City of Santa Monica was not named as a defendant in the action *Wissner* v. *Permanent Rent Control Board.*

(t) thereof was applied to them. In each instance, the Board denied the owners' application for removal permits and/or vested rights exemptions from such permits.

The trial courts overturned all of the Board's decisions by issuing writs mandating the Board to grant the applications, or in Canon's case, prohibiting the Board's applying section 1803, subdivision (t).

The local governments contend mere approval of tentative tract maps does not preclude enforcement of subsequently enacted independent land use regulations. The owners claim that upon receipt of tentative tract map approval, they have vested rights to proceed without the imposition of any subsequent conditions.

*Blue Chip/Regal, Wissner and Stoka.*

Sometime before April 10, 1979, the Santa Monica City Planning Commission approved tentative tract maps for the conversion into condominiums of the rental units existing on each of the subject properties.[3] The conversion contemplated by developers Blue Chip/Regal required the obtaining of building permits.

On April 10, 1979, the citizens of Santa Monica adopted by initiative the Amendment to the City's charter. This Amendment mandates that no controlled rental units be removed, converted or demolished without a permit from the Board authorizing removal from the rental housing market. (§ 1803, subd. (t).)[4]

---

[3] Blue Chip/Regal received approval November 7, 1978; Stoka's was approved on June 19, 1978; Wissner's (by a prior owner) was approved on June 19, 1978; and Canon's was approved on January 15, 1979.

[4] Section 1803, subdivision (t) provides as follows: "(t) REMOVAL OF CONTROLLED RENTAL UNIT FROM RENTAL HOUSING MARKET: Any landlord who desires to remove a controlled rental unit from the rental housing market by demolition, conversion or other means is required to obtain a permit from the Board prior to such removal from the rental housing market in accordance with the rules and regulations promulgated by the Board. In order to approve such a permit, the Board is required to make each of the following findings; [¶] (1) That the controlled rental unit is not occupied by a person or family of very low income, low income or moderate income. [¶] (2) That the rent of the controlled rental unit is not at a level affordable by a person or family of very low income, low income, or moderate income. [¶] (3) That the removal of the controlled rental unit will not adversely affect the supply of housing in the City of Santa Monica. [¶] (4) That the landlord cannot make a fair return on investment by retaining the controlled rental unit. [¶] Notwithstanding the foregoing provisions of this subsection, the Board may approve such a permit: [¶] (1) If the Board finds that the controlled rental unit is uninhabitable and is incapable of being made habitable in an economically feasible manner, or [¶] (2) If the permit is being sought so that the property may be developed with multifamily dwelling units and the permit applicant agrees as a condition of approval that the units will not be exempt from the provisions of this Article pursuant to Section 1801(c) and that at least fifteen (15) per cent of the controlled rental units to be built on the site will be at rents affordable by persons of low income."
The language in this section has since been slightly modified.

The Amendment specifies the Board may issue a removal permit (a) if the rental units are uninhabitable and incapable of being made inhabitable economically or, (b) if the landlord both owns habitable property and does not wish to rebuild, upon findings that (1) the building is not occupied by persons of low or moderate income, (2) cannot be afforded by persons of low or moderate income, (3) removal will not adversely affect the housing supply, and (4) the owner cannot make a reasonable return on his investment. (§ 1803, subd. (t).)

On June 29, 1979, the City adopted ordinance No. 1127 to clarify and implement the rent control law. This ordinance included recognition of the Board's authority to determine claims of vested rights, setting forth guidelines for such determinations,[5] and was later replaced by a revised ordinance No. 1153.[6]

After passage of the Amendment, the developers filed applications for vested rights exemptions to obtaining a removal permit. Following public hearings wherein evidence was taken, the Board denied the applications, making factual findings against Blue Chip/Regal, Wissner and Stoka.

Blue Chip/Regal, Wissner and Stoka, filed petitions for writs of mandate with the trial court. (Code Civ. Proc., § 1094.5.) The trial courts granted the writs, finding the developers had acquired vested rights to convert their

---

[5]The applicable portion of the rent control law is as follows: "SECTION 4604. VESTED RIGHTS. EFFECTIVE DATE. [¶] The date of April 10, 1979, shall be used as a reference point for calculating vested rights claims arising under this Chapter. [¶] SECTION 4605. VESTED RIGHTS. BASIC TEST. [¶] In order to have secured a vested right to do or not to do a certain thing notwithstanding the provisions of this Chapter, unless provided otherwise in Section 4607, a person must have secured the last governmental approval necessary to the performance of the desired thing, and, in good faith reliance on that approval, must have performed substantial work or incurred substantial liabilities in furtherance thereof. No right shall vest under this Chapter unless all conditions precedent to obtaining all necessary governmental approvals have been satisfied as determined by the Interim Rent Control Board and Permanent Rent Control Board. [¶] SECTION 4606. VESTED RIGHTS. CONVERSIONS. [¶] A property owner or subdivider is presumed to have a vested right to convert a controlled rental unit if, prior to April 10, 1979, the tentative tract map was approved and he or she submits satisfactory evidence of good faith reliance; including: [¶] a) That application for a public report has been filed with the State Department of Real Estate; [¶] b) That necessary building permits and approvals by the Architectural Review Board have been obtained. [¶] A vested right to proceed under this Chapter shall expire within three (3) years of final map approval as to all units not then sold; such unsold units are thereafter subject in all respects to this Chapter."

[6]The applicable portions of the revised rent control law is as follows: "SECTION 4604. VESTED RIGHTS. [¶] The Rent Control Board shall determine vested rights claims arising under the Rent Control Law, as well as the standards and procedures for such determinations. Any person claiming a vested right to be exempt from the permit requirements of Section 1803 (T) must substantiate the claim in a proceeding before the Rent Control Board."

properties to condominiums based on financial liabilities incurred in good faith reliance on the approved tentative tract maps. The judgments of the trial courts ordered the Board to set aside its denial of the developers' applications for vested rights exceptions and find the developers exempt from the removal permit requirements.

*Canon.*

The facts in Canon differ slightly. Canon also received tentative tract map approval from the planning commission prior to adoption of the Amendment, and the Board denied Canon's application for a vested rights exemption.

Canon petitioned the trial court for both a writ of mandate and prohibition. The trial court issued a writ prohibiting Santa Monica from: exercising jurisdiction over condominium conversion by virtue of section 1803, subdivision (t); requiring a removal permit as a requirement for condominium conversion; applying section 1803, subdivision (t) to condominium conversion; and enforcing section 1803, subdivision (t) with respect to condominium conversions.

The trial court also found section 1803, subdivision (t): unconstitutional as applied to the subdivision of real property into condominium units because of the state Subdivision Map Act (Map Act); constituted a restraint on alienation of property; and was an unconstitutional attempt to regulate the ownership and not use of property.

Appellate review was stayed pending resolution by the California Supreme Court of two cases which were deemed dispositive of many pivotal issues. These cases are *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858 [201 Cal.Rptr. 593, 679 P.2d 27] and *Nash* v. *City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894].

Because common questions of law are involved in each appeal, the four separate appeals were consolidated, and the facts reviewed in light of the recently decided cases by which this court is bound. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

CONTENTIONS

The City contends tentative tract map approval is not the point at which developers may acquire vested rights to be exempt from complying with section 1803, subdivision (t)'s removal permit requirements.

Additionally, with respect to Canon, the City claims the trial court unnecessarily reached constitutional issues.

DISCUSSION

1. *Section 1803, subdivision (t), the removal permit requirement, not preempted by the Map Act.*

■ Initially, it has been determined the Map Act does not preempt application of the removal permit requirement.

The California Supreme Court specifically ruled on this issue in *Santa Monica Pines, Ltd.* v. *Rent Control Board, supra,* 35 Cal.3d at page 869. The court stated: "The restriction on removal from the rental housing market through condominium conversion, at issue here, with its evident, independent police power source and purpose, is therefore not preempted by the Subdivision Map Act." (*Santa Monica Pines, Ltd.* v. *Rent Control Board, supra,* 35 Cal.3d at p. 869, fn. omitted.)

2. *Section 1803, subdivision (t) held partially constitutional.*

■ Likewise, the issue as to the constitutionality of section 1803, subdivision (t) was partially settled in *Nash.* The California Supreme Court recently addressed the constitutionality of section 1803, subdivision (t) in *Nash* v. *City of Santa Monica, supra,* 37 Cal.3d 97, and of a similar Berkeley ordinance in *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644 [209 Cal.Rptr. 682, 693 P.2d 261]. In *Fisher,* the court held that the prohibition against unreasonable restraints on alienation (Civ. Code, § 711) applies only to private restraints on alienation and not to municipal ordinances. (*Id.,* at pp. 692-693.)

In *Nash,* the court held section 1803, subdivision (t), did not constitute a "taking" of property (*Nash* v. *City of Santa Monica, supra,* 37 Cal.3d at p. 102), interfere with a landowner's liberty or property interests (*id.,* at p. 103), or impinge on a landowner's right to retain or sell property. (*Id.,* at pp. 103-104.)

a. *Restriction on ownership is a constitutional issue still remaining.*

■ A constitutional issue not yet specifically resolved is the developers' allegation that the restriction on removal is an unconstitutional restriction on ownership, while the City claims it is a legitimate regulation of land use. This precise issue is presently before the California Supreme Court in *Grif-*

*fin Development Co.* v. *City of Oxnard.*■ However, the court implicitly decided the issue in both *Santa Monica Pines* and *Nash.*

In *Santa Monica Pines,* the court noted local government's power to regulate condominium conversion. (*Santa Monica Pines, Ltd.* v. *Rent Control Board, supra,* 35 Cal.3d at pp. 861, 869.) In *Nash,* the court summarized its conclusion that section 1803, subdivision (t) was not constitutionally infirm, stating "while the challenged provision may be said to implicate interests which are entitled to a high degree of constitutional protection— . . . —the actual limitation upon those interests posed by the challenged provision is minimal and not significantly different from other, constitutionally permissible, limitations upon *the use* of private property imposed by government regulation." (*Nash* v. *City of Santa Monica, supra,* 37 Cal.3d at p. 100, italics added.)

Reviewing the right of a developer to convert an apartment building to condominiums, the court in *Rasmussen* v. *City Council* (1983) 140 Cal.App.3d 842 [190 Cal.Rptr. 1], addressed the proposed change from apartments to condominiums as a change in *use* to be evaluated under local nonconforming use zoning standards. (*Id.,* at p. 850.)

Restrictions on land use necessarily restrict land users. This does not make ordinances that regulate use by regulating users inherently invalid. (See *Taxpayers Association of Weymouth Township* v. *Weymouth Townships* (1976) 71 N.J. 249 [364 A.2d 1016, 1031, 83 A.L.R.3d 1051]; cert. den., *sub nom. Feldman* v. *Weymouth Township* (1977) 430 U.S. 977 [52 L.Ed.2d 373, 97 S.Ct. 1672], cited with approval in *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 742, fn. 10, 743, fn. 11 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]; *Loeterman* v. *Town of Brookline* (D.Mass. 1981) 524 F.Supp. 1325.)

Consequently, it would appear that section 1803, subdivision (t) is not an unconstitutional restriction on ownership but a legitimate regulation of land use.

### 3. *Vested rights doctrine.*

■ Amici on behalf of the City argue that if approval of tentative tract maps for condominium conversion is determined to preclude the enforcement of any subsequent regulatory measures enacted under local govern-

ments' police power, such as the removal permit requirement of section 1803, subdivision (t), the right and ability of local governments to control land use policy will be seriously impaired.

The developers urge they acquired a vested right to complete their conversions without imposition of the removal permit requirements by virtue of having expended sufficient sums in reliance on their tentative tract maps having been approved prior to enactment of the Amendment.

The cases here present yet another example of "the apparently irreconcilable conflict between the interests of a land developer who seeks to avoid compliance with a recently enacted law regulating its project, and the interests of the public in assuring development of the property in a manner consistent with the requirements of current law." (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 788 [132 Cal.Rptr. 386, 553 P.2d 546].)

a. *General principles.*

As a means of providing a method to resolve this conflict, various versions of the doctrine of vested rights have been relied on by developers and resisted by local entities, which Black's Law Dictionary defines as: "In constitutional law. Rights which have so completely and definitely accrued to a person that they are not subject to be defeated or canceled by the act of any other private person, and which it is right and equitable that the government should recognize and protect, as being lawful in themselves, and settled *according to the then current rules of law,* and of which the individual could not be deprived arbitrarily without injustice, *or of which he could not justly be deprived otherwise than by the established methods of procedure and for the public welfare.* . . . [Such interests as] cannot be interfered with by retrospective laws, . . . American States Water Service Co. of California v. Johnson, 31 Cal.App.2d 606, 88 P.2d 770, 774. Immediate or fixed right to present or future enjoyment and one that does not depend on an event that is uncertain. . . . A right complete and consummated, and of such character that it cannot be divested without the consent of the person to whom it belongs, and fixed or established, and no longer open to controversy. State ex rel. Milligan v. Ritter's Estate, Ind.App., 46 N.E.2d 736, 743." (Italics added.)

 It has long been the rule that if property owners perform substantial work and incur substantial liabilities in good faith reliance upon a permit issued by the government, they acquire a vested right to complete their

project in accordance with the terms of the permit. (*Dobbins* v. *City of Los Angeles* (1904) 195 U.S. 223 [49 L.Ed. 169, 25 S.Ct. 18]; *Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal.App.2d 776, 784 [194 P.2d 148]; *Avco Community Developers, Inc.* v. *South Coast Regional Com.*, *supra*, 17 Cal.3d at p. 791; *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858 [201 Cal.Rptr. 593, 679 P.2d 27].)

The most recent case attempting to explain the doctrine and its application stated "[t]he vested rights doctrine is ' "predicated upon estoppel of the governing body." ' " (*Avco Community Developers, Inc.* v. *South Coast Regional Com.*, *supra*, 17 Cal.3d at p. 793.) This is a principle of equitable estoppel which may be applied against the government where justice and fairness require it. (*Raley* v. *California Tahoe Regional Planning Agency*, *supra*, 68 Cal.App.3d [965] at p. 975 [137 Cal.Rptr. 699].) [¶] An equitable estoppel requiring the government to exempt a land use from a subsequently imposed regulation must include (1) a promise such as that implied by a *building permit* that the proposed use will not be prohibited by a class of restrictions that includes the regulation in question and (2) reasonable reliance on the promise by the promisee to the promisee's detriment. (See *Avco*, *supra*, 17 Cal.3d at p. 793.)" (*Santa Monica Pines Ltd.* v. *Rent Control Board*, *supra*, 35 Cal.3d at pages 866-867.) (Italics added.)

Therefore, a developer relying on an *equitable estoppel* has a vested right to go forward without complying with such subsequently enacted regulations *only* when *both* of these elements against the government are established. (*Id.*, at p. 867.)

However, leaving aside "reasonable reliance" as a fact question, two issues remain. First, what constitutes a government "promise" to allow a developer to rely and to begin measuring expenditures toward establishing a vested right. And second, assuming such a promise and reasonable reliance by a developer and a subsequent vested right, what does the vested right include, i.e. the developer has acquired a vested right, but a vested right to do what? (*Pardee Construction Co.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 471, 481 [157 Cal.Rptr. 184].)

In *Avco Community Developers, Inc.* v. *South Coast Regional Com.*, *supra*, 17 Cal.3d 785, the court stated the granting of a building permit was a promise that the use set forth would not be interfered with by certain regulations.

However, as the *Avco* court recognized, there are some instances which cannot be measured from building permit approval. (*Avco, supra*, 17 Cal.3d

at pp. 793-794.) Here, in most situations, the developers were not required to obtain building permits in order to complete the conversion. But all had received tentative tract maps approval to convert their existing structures to condominiums before the enactment of the Amendment and its removal permit requirement, and argue such approval is akin to a building permit and establishes vested rights.

*Santa Monica Pines* raises unanswered questions concerning the developers' vested rights theories, i.e., even if developers have expended substantial sums, is tentative tract map approval the point from which to measure reliance expenditures toward establishing a vested right? Or, does the vested rights doctrine even apply to condominium conversions? (See *Santa Monica Pines, Ltd.* v. *Rent Control Board, supra,* 35 Cal.3d at pp. 861, 866-867.)

Pines was a Santa Monica apartment building owner who planned to convert apartments into condominiums. He received tentative tract map approval prior to passage of the Amendment. The Board denied Pines' applications for both a removal permit and a vested rights exemption therefrom.

The *Santa Monica Pines* court factually concluded Pines had not established a vested right to continue conversion without the removal permit because even if tentative tract map approval were considered akin to a building permit for vested rights determination, Pines had not spent sufficient sums in reliance thereon. (*Id.,* at p. 867.) Therefore, whether making substantial expenditures in alleged reliance on an approved tentative tract map justifies a vested right to be free from subsequently enacted rent control laws remains to be decided.

While the court in *Santa Monica Pines* specifically did not decide whether the vested rights doctrine generally applies to condominium conversions, it did provide some guidance. The court emphasized *"that the rights which may 'vest' through reliance on a government permit are no greater than those specifically granted by the permit itself."* (*Santa Monica Pines, Ltd.* v. *Rent Control Board, supra,* 35 Cal.3d at p. 866 [italics added]), and that approval of a tentative tract map did not imply removal of the units from the rental market was also approved. (*Id.,* at pp. 866-867, fn. 6.)

The *Santa Monica Pines* court then compared the developers' situation to that of an owner selling a fee interest in a rented single family home, and pointed out that regardless of either the seller's or buyer's intent to remove the house from the rental market, or any substantial expenditures toward that end, as long as the house was a "controlled rental unit" on the date

the ordinance went into effect, the buyer would remain subject to the ordinance's requirements. (*Id.*, at p. 866.) It further observed, "We see no material difference in appellants' [Pines'] situation. For this reason alone, *we question whether the approval of a subdivision map for condominium conversion can ever lead to a vested exemption from subsequent rent control laws.*" (*Ibid.*, fn. omitted, italics added.)

■ A tentative tract map approval guarantees a developer who fulfills the conditions imposed upon it *final map approval.* (*El Patio* v. *Permanent Rent Bd.* (1980) 110 Cal.App.3d 915, 927 [168 Cal.Rptr. 276]; *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 655-656; see also Gov. Code, §§ 66473, 66474.) Tentative tract map approval does *not* guarantee that a building permit, if required, will be issued, as the building permit has an independent reason for existence. (*Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d at p. 795; *Hazon-Iny Development, Inc.* v. *City of Santa Monica* (1982) 128 Cal.App.3d 1, 10-11 [179 Cal.Rptr. 860].)

Further, a developer must comply with the laws in existence *at the time a building permit is issued* in order to obtain said permit. (*Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d at p. 795.)[7]

■ The removal permit requirement is separate and independent from the subdivision process. (*Santa Monica Pines, supra,* 35 Cal.3d at p. 869.)

---

[7]Santa Monica Municipal Code (SMMC) section 8103, adopted January 25, 1977, designated the Uniform Building Code 1976 edition, and the Uniform Building Code Standards as the 1976 edition of the Building Code of the City of Santa Monica. Section 301(a) of that Building Code provides: "No person, firm, or corporation shall erect, construct, enlarge, alter, repair, move, improve, remove, convert, or demolish any building or structure in the city, or cause the same to be done, without first obtaining a separate building permit for each such building or structure from the Building Official."

Section 302(a) of that Building Code provides in pertinent part: "The application, plans, and specifications filed by an applicant for a permit shall be checked by the Building Official. Such plans may be reviewed by other departments of the city to check compliance with the laws and ordinances under their jurisdiction. If the Building Official is satisfied that the work described in an application for permit and the plans filed therewith conform to the requirements of this Code and other pertinent laws and ordinances, and that the fee specified in Section 303(a) has been paid, he shall issue a permit therefor to the applicant."

On September 10, 1980, SMMC section 8103 was reenacted as amended to designate the 1979 edition of the Uniform Building Code Standards as the City's Building Code. Section 302(a) was renumbered section 303 without substantial change.

SMMC section 4608, enacted July 29, 1979, provides: "On and after April 18, 1979, no department, commission, board, or agency of the City shall accept for processing or issue any new permits or applications to demolish or otherwise remove a controlled rental unit or to convert a controlled rental unit to residential use unless such City Permit or application is conditioned on securing a permit under Section 1803(t) from the Rent Control Board."

Section 4608 was reenacted without substantive change as SMMC section 4603 on April 4, 1980.

A vested right to obtain a final map or to complete a building, as per those requirements imposed at the time of tentative tract map approval or building permit acquisition, does not necessarily include a vested right to be free of a removal permit requirement.

Observing there is no dispute over the developers' authority to subdivide apartment buildings and sell fee interests in individual units as provided for in approved tentative tract maps, the *Santa Monica Pines* court explained this does not mean developers can sell units free of the rent control law's removal permit requirement. (*Id.*, at pp. 865-866.)

b. *Application here.*

■ The City is persuasive in arguing that the *Santa Monica Pines* opinion means developers can subdivide and sell units, but new owners must comply with existing rent control law and obtain removal permits before removing units from the rental market.

Without alternative, we follow the direction of *Santa Monica Pines* and hold approval of a tentative tract map for condominium conversion does not lead to a vested rights exemption from subsequent rent control laws.[8]

In the case before us, the removal permit requirement does not constitute an additional condition to the developers' right *to complete* the subdivision. As discussed in *Santa Monica Pines*, the developers are free to complete the subdivision, and to sell individual fee interests. Section 1803, subdivision (t) simply requires *whoever* owns the converted unit to comply with the removal permit requirement. (See *People* v. *H & H Properties* (1984) 154 Cal.App.3d 894 [201 Cal.Rptr. 686].)

It would appear there is no reason to exempt developers in the process of condominium conversions from regulations that unquestionably apply to the rest of the class of residential landlords. (See *People* v. *H & H Properties, supra,* 154 Cal.App.3d 894, 902.)

---

[8]This holding makes it unnecessary to review the trial courts' factual findings on the issue of the substantiality of sums spent by developers allegedly in reliance. Further, we need not consider the question as to whether vested interests are involved, as distinguished from the question of the extent of the rights if such interests are involved, requires an exercise of independent judgment by a trial court reviewing the administrative record, or a determination that there is substantial evidence supporting the administrative finding. Regardless of the standard of review, and even if we accept the trial court's findings as to substantial expenditures, tentative tract map approval does not lead to a vested right to be exempt from the removal permit requirement. (See *Oceanic California, Inc.* v. *North Central Coast Regional Com.* (1976) 63 Cal.App.3d 57, 62 [133 Cal.Rptr. 664]; see also *Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d at pp. 796-797, fn. 7.)

Condominium conversions generally require no substantial construction. Moreover, if an owner is not permitted to remove a unit from the rental market, the owner still owns valuable rental income property. To the extent the owner and/or developer have enhanced the building, conversion expenses can be recouped through appreciation and rent increases. Further, the owner remains free to sell the property. (See *Nash* v. *City of Santa Monica, supra,* 37 Cal.3d at pp. 103, 106.)

4. *Local ordinance not controlling.*

Section 4604 of Santa Monica Ordinance No. 1127 does not affect our holding. Section 4606 of Santa Monica Ordinance No. 1127 created a "presum[ption]" of a vested right to convert based on tentative tract map approval and "satisfactory evidence of good faith reliance" thereon. (See fn. 5, *ante.*)

Again, it is not a property owner's right to convert the apartment into a condominium that is disputed. Rather, it is the property owner's right to remove the unit from the rental housing market which is in question.[9]

CONCLUSION

Local governments, including the City herein, may regulate land use in their communities. The removal permit requirement of section 1803, subdivision (t) is a land use regulation with which all developers engaged in condominium conversions must comply, irrespective of tentative tract map approvals received prior to the enactment thereof.

DISPOSITION

Because section 1803, subdivision (t) is not unconstitutional, the judgment in Canon is reversed.

---

[9]Even if the ordinance might be considered to apply here, we question whether the Santa Monica City Council had the authority to extend the property owners' vested rights beyond the common law doctrine of vested rights existing and contemplated upon the adoption of the Amendment. (See *Brown* v. *Berkeley* (1976) 57 Cal.App.3d 223, 231 [129 Cal.Rptr. 1], which holds that if a charter and ordinance conflict, the charter must prevail; and *Pardee Construction Co.* v. *California Coastal Com., supra,* 95 Cal.App.3d at p. 481, which states that the extent of a vested rights exemption once obtained is "a state matter controlled by constitutional principles; it is not governed by municipal ordinance or policies.")

Because none of the developers herein acquired a vested right, the scope of which included freedom from the subsequently enacted rent control laws, the judgments in Blue Chip/Regal, Wissner and Stoka are reversed.

Lui, J., and Danielson, J., concurred.