[No. A046585. First Dist., Div. Three. Aug. 2, 1990.]

LAND WASTE MANAGEMENT, Plaintiff and Appellant, v. CONTRA COSTA COUNTY BOARD OF SUPERVISORS et al., Defendants and Respondents.

COUNSEL

Howard, Rice, Nemerovski, Canady, Robertson & Falk, William A. Falik, H. Joseph Escher III, Todd E. Thompson, Cohen & Hsu and Jonathan A. Cohen for Plaintiff and Appellant.

Crosby, Heafey, Roach & May, Peter W. Davis, John E. Carne, Kathy M. Banke, Jenny D. Smith, Victor J. Westman, County Counsel, and Silvano B. Marchesi, Assistant County Counsel, for Defendants and Respondents.

**OPINION**

**MERRILL, J.**—Land Waste Management appeals from a judgment of dismissal entered pursuant to an order sustaining respondents' demurrer to its first amended complaint without leave to amend. We affirm.

I

In our review of this judgment of dismissal sustaining the demurrer of respondents Contra Costa County Board of Supervisors, Thomas Torlakson, Sunne McPeak, Robert Schroder and County of Contra Costa, we are guided by the principle that a demurrer admits the truth of all material facts properly pleaded, but not of any contentions, deductions or conclusions of fact or law alleged in the complaint. (*White* v. *Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)

The complaint alleges that appellant Land Waste Management owns a 480-acre plot of undeveloped land in an area of Contra Costa County (the County) known as Kirker Pass. Appellant purchased the land in 1983 with the specific purpose of developing a sanitary landfill for the disposal of solid waste, in accordance with the Contra Costa County Solid Waste Management Plan (the Waste Plan). In order to develop and operate the Kirker Pass site as a landfill, appellant was required to secure from the respondent Contra Costa County Board of Supervisors (the Board) an amendment to the County General Plan (General Plan); an amendment to the Waste Plan; cancellation of a Williamson Act land conservation contract; a change in zoning for the property; approval under state and federal environmental laws; and approval of a land-use permit.

On May 11, 1984, appellant submitted an application to the Community Development Department (the Development Department) for an amendment to the General Plan to permit the development and operation of a landfill. The Development Department rejected this initial application in June 1984, and asked for more detailed information. Appellant submitted additional data, and the application for an amendment to the General Plan was accepted on December 20, 1984.

In January 1985, the Development Department ordered the preparation of an Environmental Impact Report (EIR) under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.). Appellant submitted a draft EIR in or about February 1986. In May and June 1986, appellant's applications for rezoning of the project site, for

cancellation of the Williamson Act agricultural preserve contracts, and for a land-use permit, were accepted. The EIR was approved and these applications were accepted by the Development Department at that time or shortly thereafter.

Thereafter, appellant's multiple applications moved on to the county planning commission for study and review. In July 1986, the planning commission deferred its consideration of these applications until late September 1986 in order to give time to several competing landfill site applications to work their way through the administrative process. At that time, the planning commission determined that before it could act upon appellant's application with regard to the Kirker Pass site, it needed the Development Department and the solid waste commission to draw up planning parameters, or "model conditions," for all of the several sanitary landfill proposals pending before the County. This process continued until June 1987.

In late summer 1986 through early 1987, the Planning Commission held public hearings on the Kirker Pass site, and the Development Department conducted its joint study with the solid waste commission. In March 1987, the Development Department staff submitted its report and recommendation recommending that appellant's proposal be denied as formulated and presented.

Nevertheless, in July 1987, the planning commission recommended to the Board that it approve appellant's applications for a General Plan amendment, rezoning, Williamson Act contract cancellation, and issuance of a land-use permit, with certain conditions. Consideration of appellant's development proposal then moved to the Board, which conducted further public hearings. On November 3, 1987, the Board, by a vote of three to two, approved a resolution declaring its intent to approve appellant's applications for General Plan and Waste Plan amendments, as well as the EIR. It directed the staff of the Development Department to draw up the necessary findings with regard to the approval of these applications. The Board continued to December 15, 1987, its consideration of appellant's requests for rezoning, Williamson Act contract cancellation, and land-use permits.

Before the Board reconvened to consider the remainder of appellant's applications, one of the members of the Board who had voted to support the project, respondent Supervisor Robert Schroder, determined that he had a conflict of interest with respect to appellant's application because of a business connection he had with a company proposing a competing waste

disposal site. When the Board met again on December 1, 1987, Supervisor Schroder announced his intention to abstain, on advice of counsel. The Board postponed a vote on the issue until February 9, 1988, at which time it deadlocked on a vote of two to two. As a result of Supervisor Schroder's abstention, the matter remained deadlocked on the Board and the resolution was tabled.

Appellant filed a complaint for damages and a petition for writ of mandate on September 20, 1988. It sought damages in excess of $30 million, and a writ of mandate to compel respondents "forthwith to approve the Kirker Pass Project and certify the [EIR] prepared in connection" therewith, pursuant to the Permit Streamlining Act, Government Code section 65920 et seq. Appellant contended that its project must be deemed to have been approved as of September 5, 1987, or one year and ninety days after the date on which the Development Department finally accepted as complete the application for a use permit in connection with the Kirker Pass site. It also sought a large sum in damages for alleged conspiracy by Supervisor Schroder and the other respondents to delay appellant's applications while those of competitors moved forward.

Respondents demurred, and the trial court sustained their demurrer with leave to amend. Appellant then filed a first amended complaint making essentially the same allegations, with new causes of actions alleging various economic torts. Respondents again demurred. This time, the trial court sustained the demurrer without leave to amend. It found that the time for respondents to act on appellant's applications had not yet begun to run, because the legislative prerequisites—amendment of the General Plan, the Solid Waste Management Plan and the applicable zoning ordinances—had not been enacted. It also found that appellant's tort claims were barred by legislative immunity. Thereafter the trial court entered judgment dismissing the complaint, and this appeal followed.

## II

Appellant contends that the Permit Streamlining Act (Gov. Code, § 65920 et seq.) requires that its permit application be "deemed approved" if not acted upon within one year of the date of acceptance, despite the fact that it was submitted as part of a comprehensive package of concurrent applications for zoning changes and General Plan amendments. This court has previously determined that an application for rezoning may not be deemed approved by operation of law under the time limitation provisions of the act (Gov. Code, §§ 65950, 65956). (*Landi* v. *County of Monterey* (1983) 139 Cal.App.3d 934, 935-937 [189 Cal.Rptr. 55] (hereinafter

*Landi*).) Appellants argue that *their case is distinguishable from Landi* because here their requests for rezoning (and for amendments to, inter alia, the General Plan) were submitted *together with* a permit application. We hold that the argued distinction is not controlling, and that the same rationale upon which *Landi* was based applies here.

The relevant sections of the act for purposes of this appeal are Government Code sections 65950 and 65956. Government Code section 65950 states in pertinent part as follows: "Any public agency which is the lead agency for a development project for which an environmental impact report is prepared pursuant to Section 21100 or 21151 of the Public Resources Code shall approve or disapprove *the project within one year from the date* on which an application requesting approval of the project has been received and accepted as complete by that agency."[1] Government Code section 65956, subdivision (b), states in pertinent part: "In the event that a lead agency or a responsible agency fails to act to approve or to disapprove a development project within the time limits required by this article, the failure to act shall be deemed approval of the permit application for the development project."

The definitional provisions applicable for the interpretation of these statutes are as follows: " 'Development project' means any project undertaken for the purpose of development. 'Development project' includes a project involving the issuance of a permit for construction or reconstruction but not a permit to operate. 'Development project' does not include any ministerial projects proposed to be carried out or approved by public agencies." (Gov. Code, § 65928.) " 'Project' means any activity involving the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Gov. Code, § 65931.)

■ In *Landi*, we held that the one-year limitation in Government Code sections 65950 and 65956 does not cover the granting of a request for a zoning amendment, reasoning that the statutory time limitation applies only to "projects" which are adjudicatory in nature, while zoning amendments are legislative rather than adjudicatory in character. Citing and relying on *Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511 [169 Cal.Rptr. 904, 620 P.2d 565] and *Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833 [130 Cal.Rptr. 169], we defined a legislative act as the formulation of a rule to be applied to all future cases, and an

---

[1] In 1989, this statute was amended in a way not relevant to the issues to be decided in the case at bench.

adjudicatory act as the actual application of such a rule to a specific set of existing facts. (*Landi, supra*, 139 Cal.App.3d at p. 936.)[2]

The fundamental constitution of all local land-use policy, governing future growth and development, is the general plan. The policies embodied in the general plan are, in turn, legislatively implemented by local agencies through zoning ordinances. By statute, zoning ordinances must be consistent with the general plan. (Gov. Code, §§ 65800, 65850, 65860; *deBottari* v. *City Council* (1985) 171 Cal.App.3d 1204, 1211 [217 Cal.Rptr. 790]; *Neighborhood Action Group* v. *County of Calaveras* (1984) 156 Cal.App.3d 1176, 1184-1185 [203 Cal.Rptr. 401]; *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 997-998 [165 Cal.Rptr. 514]; *City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 532 [160 Cal.Rptr. 907].)

As stated in *Landi, supra*, 139 Cal.App.3d at pages 936-937, the grant of a land-use permit or variance is an adjudicatory act, rather than a legislative one. (Cf. *Orinda Assn.* v. *Board of Supervisors* (1986) 182 Cal.App.3d 1145, 1161 [227 Cal.Rptr. 688].) Adjudicatory decisions must be consistent with applicable land-use legislation. (Gov. Code, §§ 65567, 65860, 65901; *City & County of S. F.* v. *Superior Court* (1959) 53 Cal.2d 236, 251 [1 Cal.Rptr. 158, 347 P.2d 294]; *deBottari* v. *City Council, supra*, 171 Cal.App.3d at p. 1211; *Bownds* v. *City of Glendale* (1980) 113 Cal.App.3d 875, 880 [170 Cal.Rptr. 342].) Thus, local government entities cannot issue land-use permits that are inconsistent with controlling land-use legislation, as embodied in zoning ordinances and general plans. (*Orinda Assn.* v. *Board of Supervi-*

---

[2] "Adjudicatory acts include the granting of variances and conditional use permits, and the approval of tentative subdivision maps. [Citation.] . . . '[T]he permit process clearly involves the application of existing rules to a specific set of existing facts.' [Citation.] An applicant seeking the approval of a development project as defined by Government Code sections 65928 and 65931 is seeking an adjudicatory determination not 'the formulation of a rule to be applied to all future cases . . . .' [Citation.] The issuance 'of a lease, permit, license [and] certificate . . .' (Gov. Code, § 65931) entails the ' ". . . application of . . . a rule to a specific set of existing facts." ' (*Ibid.*)

"The granting of a zoning amendment is, on the other hand, a legislative decision . . . . '[Z]oning ordinances, whatever the size of parcel affected, are legislative acts.' [Citation.] . . . 'Thus whatever the legal controversy and whatever the size or ownership of the land involved, every California decision on point . . . has held that the enactment or amendment of a zoning ordinance is a legislative act.' [Citation.]

" . . . . . . . . . . . . . . . . . . . . . .

". . . Government Code section 65950 expedites the determination of the application of existing rules to an individualized set of existing facts. It was not meant to impose a rigorous timetable on local government's exercise of its policy-making legislative function." (*Landi, supra*, 139 Cal.App.3d at pp. 936-937.)

*sors, supra*, 182 Cal.App.3d at p. 1162, fn. 10; *Neighborhood Action Group* v. *County of Calaveras, supra*, 156 Cal.App.3d at p. 1184.)[3]

■ Thus, a land-use permit which is inconsistent with existing zoning ordinances can be issued by a responsible administrative entity only after the applicable ordinances have been amended by the legislative process. In turn, where the proposed changes in the zoning ordinance are inconsistent with the general plan, the two must also be brought into conformity. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra*, 11 Cal.3d at pp. 513-518, 522; *Orinda Assn.* v. *Board of Supervisors, supra*, 182 Cal.App.3d at pp. 1161-1162, 1168.) Such changes cannot be made by an administrative body such as the planning commission in this case; they must be made by the governing legislative body pursuant to prescribed procedures. Issuance of a permit inconsistent with zoning ordinances or the general plan may be set aside and invalidated as ultra vires. (*City and County of San Francisco* v. *Board of Permit Appeals* (1989) 207 Cal.App.3d 1099, 1105 [255 Cal.Rptr 307]; *Neighborhood Action Group* v. *County of Calaveras, supra*, 156 Cal.App.3d 1184-1186; *City of Carmel-by-the-Sea* v. *Board of Supervisors* (1982) 137 Cal.App.3d 964, 968-970, 972-999 [187 Cal.Rptr. 379]; *Friends of "B" Street* v. *City of Hayward, supra*, 106 Cal.App.3d at p. 988; *City and County of San Francisco* v. *Padilla* (1972) 23 Cal.App.3d 388, 400-401 [100 Cal.Rptr. 223].)

In this case, the necessity that any permit granted to appellant be consistent and in compliance with applicable zoning and general plan requirements is, if anything, even stronger. The Legislature has expressly required

---

[3] Appellants urge that although Government Code section 65860 requires that local government zoning and general plans be consistent, there is nothing in the law requiring that land-use permits be consistent with general plans. This argument ignores the fact that land-use permits must be consistent with zoning ordinances; and that the latter must in turn be consistent with the overall general plan. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 513-518, 522 [113 Cal.Rptr. 836, 522 P.2d 12]; *Orinda Assn.* v. *Board of Supervisors, supra*, 182 Cal.App.3d at pp. 1160-1169; *Friends of "B" Street* v. *City of Hayward, supra*, 106 Cal.App.3d at p. 998.)

The opinion cited by appellant in support of this assertion, *Elysian Heights Residents Assn., Inc.* v. *City of Los Angeles* (1986) 182 Cal.App.3d 21 [227 Cal.Rptr. 226], is factually distinguishable. In that case, the applicable zoning ordinance was itself inconsistent with the general plan, and the Legislature had expressly given the responsible local governing body time to bring the zoning ordinance into conformity with its general plan. The building permits in that case, although inconsistent with the general land-use plan, were in conformance with the existing zoning. Over a strong dissent, a divided panel of the Court of Appeal held that the permits were not void or invalid, despite their inconsistency with the general plan. Here, in contrast, the permit sought by appellant is *not* consistent with applicable zoning. In addition, there is an express state statutory requirement that solid waste landfills, such as the one proposed, must be consistent with the local general plan and with the solid waste management plan. (Pub. Resources Code, §§ 40000 et seq., 41700 et seq., 44001 et seq.)

that all landfills be consistent with local general and waste management plans. (Pub. Resources Code, §§ 40000 et seq., 41701, 41702, 41704, 41720.)

In our opinion, the reasoning in *Landi* is fully applicable here. Any other result would frustrate California's system of land-use regulation by violating the cardinal principle that land-use permits must be consistent with zoning and, in turn, with the applicable general plan.

The Permit Streamlining Act cannot be used to compel legislative changes to a zoning ordinance or a general plan because the act is limited to projects that are adjudicatory in nature. These legislative enactments which cannot be compelled under the Permit Streamlining Act are essential prerequisites to the adjudicatory act of approving and issuing the permit which appellant now seeks. Under established law, local government agencies are *powerless* to issue land-use permits which are inconsistent with governing legislation. (*Orinda Assn.* v. *Board of Supervisors, supra,* 182 Cal.App.3d at pp. 1161-1162, 1167-1169.) Thus, the permit at issue cannot be approved without legislative amendments to the applicable zoning ordinance and the general plan. Yet our adoption of the interpretation of the Permit Streamlining Act urged by appellant would necessarily result in the amendment or revision of those legislative acts without the concurrence of the responsible legislative body, and the forced issuance of permits inconsistent with governing land-use legislation. This is inconsistent with *Landi*, which held: "Government Code section 65950 expedites the determination of the application of existing rules to an individualized set of existing facts. It was *not* meant to impose a rigorous timetable on local government's exercise of its policy-making legislative function." (*Landi, supra,* 139 Cal.App.3d at p. 937; italics added.)

Appellant contends that the deemed approval of a permit application under these circumstances would not undermine or disrupt the overall land-use planning system, despite its violation of existing zoning ordinances and the general plan, because it is a "one-time" exception, applicable only to a single parcel of land. The fallacy of this assertion is evident as soon as its inevitable results are contemplated.

In the first place, appellant ignores the substantial size of the parcel in question (480 acres) and the extremely controversial use to which it seeks to put it. In this particular case, appellant's interpretation of the Permit Streamlining Act would result in the unconditional "approval" of a huge sanitary landfill, in defiance of the general plan, applicable zoning, state

environmental laws, and the state statutes governing precisely such developments.

Moreover, our adoption of appellant's argument would render land-use planning almost impossible to administer. In all probability, future developers would view the granting of this project as a precedent enabling them to claim similar rights, rather than as a limited, one-time exception. Local agencies would be flooded with applications for all sorts of projects and developments not in conformity with existing zoning or general plans. If these were all to be deemed approved at the end of the relatively brief statutory period despite the local legislative body's failure to amend the applicable zoning and general plan to conform with the proposals, many land-use ordinances would become unenforceable, and land-use planning in general would suffer. As the Supreme Court stated in *Arnel Development Co.* v. *City of Costa Mesa, supra,* 28 Cal.3d at page 523, "The size of the parcel . . . has very little relationship to the theoretical . . . distinction between the making of land-use policy, a legislative act, and the asserted adjudicatory act of applying established policy. The rezoning of a 'relatively small' parcel . . . may well signify a fundamental change in . . . land-use policy."

Neither do we agree with appellant's argument that the Permit Streamlining Act creates an exception to the established law requiring hierarchical consistency of land-use permits, zoning ordinances, and general plans. ▮ ▮▮▮ The pertinent statute itself, Government Code section 65956, subdivision (b), was amended in 1987 specifically to provide that only *permit* applications will be deemed approved upon the failure of the responsible agency to act to approve or to disapprove a development project within the statutory time limits. (Stats. 1987, ch. 985, § 5, No. 4 Deerings Adv. Legis. Service p. 3357, No. 10 West's Cal. Legis. Service, p. 82.)[4] Even before this amendment, the Permit Streamlining Act defined

[4] The amendment was made after the decision in *Landi, supra,* 139 Cal.App.3d 934, in 1983. Since the Legislature did not change the statute in a way to conflict with that case, it must be presumed to have acquiesced in the previous judicial construction of the statute. (*Viking Pools, Inc.* v. *Maloney* (1989) 48 Cal.3d 602, 609 [257 Cal.Rptr. 320, 770 P.2d 732]; *Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 219 [246 Cal.Rptr. 733, 753 P.2d 689].) We are not persuaded by appellant's argument that the Legislature has specifically rejected the interpretation of the Permit Streamlining Act we adopt in this case. The Legislature's failure to enact an amendment which would have expressly denied the statute's applicability to projects for which the permitting agency was otherwise required by state or local law to deny approval, is not controlling. The Legislature's failure to amend an existing statute "is inconclusive and has little interpretive value." (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 97 [255 Cal.Rptr. 670, 767 P.2d 1148].) We are more persuaded by what the Legislature did do, in changing the automatic approval provision to clarify that

the word "project" as "any activity involving the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Gov. Code, § 65931.) Not included in this definition are activities which would involve or require any change in applicable zoning ordinances or general plans. We find nothing in the statute whatsoever to support appellant's argument that it overrides the well-established and extensive body of law relating to land-use planning and the requirement of consistency between land-use permits, zoning, and general plans.

The mischievous consequences which would be attendant to our adoption of appellant's interpretation of the Permit Streamlining Act are well illustrated by the circumstances of this case. Here, appellant's requested permit was not (and could not be) granted because the requisite changes in zoning and the general plan had not yet been enacted. Those legislative actions, in turn, could only be carried out by the Board, an elected body. The Board failed to do so because of deadlock created by conflicting points of view and the abstention of one member for reasons of conflict of interest. Although this failure to resolve the issue was unfortunate, it was the result of the necessarily political nature of the kind of decision that had to be made. The political deadlock in this case is a measure of just how controversial this proposed project has become. It is precisely because changes in zoning and the general plan have such far-reaching effects on the future that they cannot be left to nonelected administrative entities, but must be the responsibility of a policymaking body politically answerable to the public.

▆▆▆ We hold that the Permit Streamlining Act (Gov. Code, § 65920 et seq.) does not require that permit applications be deemed approved if not acted upon within the statutory period when such permit applications would require legislative changes in applicable zoning ordinances, general plans, or other controlling land-use legislation.

### III

Appellant urges not only that its permit must be deemed approved, despite the continuing pendency of its concurrent applications for prerequisite legislative changes in the applicable zoning ordinances and general plan, but that the EIR prepared in connection with the proposed project must also be deemed certified. ▆▆▆ In short, it contends that the automatic approval provisions of the Permit Streamlining Act apply to CEQA. Finding no support for this in either act, we must disagree.

---

only "permits" would automatically be deemed approved, and by failing to amend the statute to overrule the interpretation thereof in *Landi, supra,* 139 Cal.App.3d 934.

Appellant bases its contention on the coincidental fact that CEQA (Pub. Resources Code, § 21000 et seq.), which requires a local agency to prepare and certify an EIR for any proposed project that may have a substantial or potentially substantial adverse environmental impact, also provides that certification of EIRs for private projects must take place within a time limit "not to exceed one year." (Pub. Resources Code, §§ 21060.5, 21065, 21068, 21100.2, 21151, 21151.5.) The argument overlooks the fact that nowhere in CEQA is there any provision for automatic or "deemed" certification of EIRs if action is not taken within one year.

Moreover, the Permit Streamlining Act, which was enacted after CEQA, did not add any automatic approval provision for EIRs, and did not mention EIR certification in the automatic approval provisions which it did set forth. The Legislature must be presumed to have been aware of the CEQA time limits at the time it enacted the Permit Streamlining Act, indicating its tacit intent to leave the law as it stands. (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394]; *Youngblood* v. *Gates* (1988) 200 Cal.App.3d 1302, 1310-1311 [246 Cal.Rptr. 775].) In view of the Legislature's failure to enact such a drastic provision, we now decline to read it into CEQA ourselves.

## IV

Finally, appellant challenges the trial court's sustaining of the demurrer with respect to its third through sixth causes of action on grounds of legislative immunity. █ The issue is whether appellant may state causes of action in tort against individual county supervisors or the Board itself under the circumstances of this case. We conclude that it may not.

The Government Code sets forth a number of immunities to protect public employees from the threat of suit for liability for alleged injuries arising out of the exercise of their governmental duties. Thus, Government Code section 821 states: "A public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment." Government Code section 818.2 states the same immunity for public entities. Government Code section 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Government Code section 821.2 sets forth an immunity for injuries caused by public employees in their "issuance, denial, suspension or revocation of, or by [their] failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where [they

are] authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." Government Code section 818.4 states the corresponding immunity for government entities.

These statutes are clearly applicable to the respondents in this case. Although appellant attempts to avoid the sweep of these immunity provisions by describing its tort claims in terms of an alleged conspiracy, the courts have been uniform in their rejection of such claims when it is clear, as it is here, that their factual basis rests entirely on the exercise of protected governmental duties or functions. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 320-328 [216 Cal.Rptr. 718, 703 P.2d 58]; *Martelli* v. *Pollock* (1958) 162 Cal.App.2d 655, 657-659 [328 P.2d 795].) In this case, no matter how creatively appellant tries to characterize its claims regarding Supervisor Schroder and the other respondents herein, the act which it claims caused it damage was simply Schroder's abstention from voting as a member of the board of supervisors in connection with the Kirker Pass project. Under the cited immunity statutes, however, neither individual legislators nor legislative entities can be sued in tort for injury caused by adoption of or failure to adopt an enactment, or by failure or refusal to issue or deny a permit, license or similar authorization.

The judgment is affirmed.

White, P. J., and Strankman, J., concurred.