**In re The PARK BEYOND THE PARK, a California Limited Partnership, Debtor.**

**Jerry CONROW, an individual and partner in Park Beyond the Park, a California Limited Partnership, Appellant,**

**v.**

**CITY OF TORRANCE, a Municipal Corporation, and Does 1–100, inclusive, Appellees.**

BAP No. CC–92–1026–JPV.

Bankruptcy No. LA 90–17187–SB.

Adv. No. LA 90–02345–SB.

United States Bankruptcy Appellate Panel for the Ninth Circuit.

Argued and Submitted on March 16, 1993.

Memorandum Filed June 29, 1993.

Opinion Decided Sept. 14, 1993[1].

1. The Memorandum disposition filed on June    29, 1993 is redesignated as an authored Opinion.

Richard L. Knickerbocker, Woodland Hills, CA, for The Park Beyond the Park.

Michael R. Leslie, Los Angeles, CA, for City of Torrance.

Before: JONES, PERRIS, and VOLINN, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

### SUMMARY

A land developer received a conditional use permit from a municipality to build an office complex in a mostly industrial area, and built an office shell with underground parking—one parking space for every 275 square feet of floor space. Several years later (the property having remained vacant in the interim) the developer began negotiations with the county to lease the office shell for courtroom uses. Before the bargain was consummated, the City passed an "urgency" ordinance requiring one parking space for every 150 feet of floor space for court-related uses. The bargain between the developer and the county fell through, the developer filed for bankruptcy, bringing an adversary suit against the city on constitutional and tort grounds. The bankruptcy court entered summary judgment

for the municipality, and the developer appeals.

## BACKGROUND

Jerry Conrow is a partner in the California Limited Partnership of The Park Beyond The Park ("PBP"). Together, Conrow and PBP constitute the Appellants ("Appellants") in this case. In October of 1985 Appellants applied for and received a conditional use permit from the City of Torrance ("Torrance") to use the property for "hi-tech offices and high end industrial/commercial space." The conditional use permit was necessary because the property was located in an M–2 zone which otherwise does not allow for such uses. In accordance with Torrance Municipal Code, the parking requirements for the building were calculated at 60% office use (one space for every 300 square feet) and 40% industrial use (one space for every 400 square feet). Torrance, Cal., Mun.Code §§ 93.2.6 and 93.2.18 (1993). Appellants constructed an exterior shell but never completed the interior space. They provided 414 parking spaces, one space for every 275 square feet.

In 1989 Appellants apparently began negotiations to lease space in the property, still only a shell, to Los Angeles County ("the County") for courtroom use. In October of 1989, before any lease with the County was consummated, the Torrance City Council ("City Council") passed Ordinance 3287 ("the Ordinance" or "3287") which established a conditional use permit procedure for court-related uses and set the parking requirements for such uses at one space for each 150 square feet.

Ordinance 3287 was both considered and enacted by the City Council on October 17, 1989 on an "urgency" basis stating: "there exists an immediate threat to public peace, health, safety and general welfare; [and]

that the City Council hereby declares this Ordinance to be an urgency measure for the immediate preservation of the public peace, health, safety, and general welfare." *Urgency Ordinance No. 3287* § 1 (Oct. 31, 1989) (partially codified in Torrance, Cal., Mun.Code § 95.3.44 (1993)). Appellants were in attendance and spoke at the October 17 meeting.

In April 1990 PBP applied for a second conditional use permit to allow for court-related use, which application was denied by the City Council based on the conclusion that PBP had not provided for adequate parking.[2]

Appellants' potential lease with the County was never consummated. PBP filed for bankruptcy protection on January 8, 1991, and thereafter filed an adversary complaint. Torrance moved for summary judgment, which motion was granted by the bankruptcy court.[3] Appellants appeal. We affirm.

## STANDARD OF REVIEW

■ We review *de novo* the bankruptcy court's entry of summary judgment. *E.g., In re Marvin Properties, Inc.,* 854 F.2d 1183, 1185 (9th Cir.1988).

## DISCUSSION

Three legal theories can be distilled from the pleadings: (1) inverse condemnation (5th Amendment taking), (2) interference with advantageous business relationship and prospective economic advantage (tort), and (3) due process violations (14th Amendment).[4] Each theory is presented separately, although some of the sub-arguments may overlap.

## INVERSE CONDEMNATION

Appellants argue that they had a vested interest in the status quo at the time Ordinance 3287 was enacted, and that the en-

---

**2.** PBP no longer owns the property, and the denial of this second application is not part of the appeal.

**3.** The bankruptcy court denied Appellants' cross-motion for partial summary judgment.

**4.** Appellants also allege violation of civil rights under 42 U.S.C. § 1983. To show such a violation, Appellants must show violation of procedural or substantive due process, which they have failed to do. Appellants have also failed to support their allegation that Torrance acted arbitrarily and capriciously.

actment amounted to a taking of their vested property rights.

The facts are not in dispute. Appellants had neither signed a lease with the County regarding courtroom use nor begun construction. Courtroom uses had never been addressed in the Torrance Municipal Code before Ordinance 3287. Appellants' conditional use permit makes no mention of courtroom uses, but states that the property will be used for "hi-tech offices and high end industrial/commercial space." Both parties interpret the silence in their favor, Appellants saying that "office space" included courtroom use, and Torrance saying that it did not. *See* Torrance, Cal., Mun. Code § 93.2.6 (1993) (defines business and office use).

1. *Vested Rights*

■ The term "office space," if it ever included courtroom use within its purview, ceased to include it after October 17, 1989 when Ordinance 3287 was passed. Had Appellants used their property for courtroom use before that date they might arguably have gained some right or interest in continuing such use. But they had not.

The only other way to obtain vested rights in the status quo is (1) by getting a specific promise from the city; and (2) by reasonable reliance thereon. *See Avco Community Developers, Inc. v. South Coast Regional Comm'n,* 17 Cal.3d 785, 132 Cal.Rptr. 386, 553 P.2d 546 (1976), *cert. denied,* 429 U.S. 1083, 97 S.Ct. 1089, 51 L.Ed.2d 529 (1977); *Blue Chip Properties v. Permanent Rent Control Board,* 170 Cal.App.3d 648, 659, 216 Cal.Rptr. 492, 497–98 (1985). In the instant case there was neither a specific promise nor any form of reliance.

The *Avco* and *Blue Chip* approach is more or less codified in the California Government Code. Cal.Gov.Code § 65864, *et seq.* (1992). These provisions establish a statutory procedure specifically authorizing local governments to freeze land use regulations on the development of a particular piece of property. Landowners can thus avoid the later imposition of new rules and regulations that conflict with land use

terms contained in the development agreement. *Id.* § 65866. Appellants never submitted a § 65866 application, and therefore never established vested rights.

2. *Taking*

■ Even if Appellants had acquired vested rights, Torrance argues that Ordinance 3287 had no effect on those rights. Under their conditional use permit, Appellants were still capable of using their property for any "hi-tech offices and high end industrial/commercial space," including courtroom space, after 3287's enactment. Any court-related use simply required Appellants to add more parking area or to lease space from neighboring property owners.

Furthermore, "land-use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land....'" *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 834, 107 S.Ct. 3141, 3147, 97 L.Ed.2d 677 (1987); *see also Harris v. County of Riverside,* 904 F.2d 497, 502 (9th Cir.1990) (rezoning arguably made land unsuitable for any use). Appellants make no claim that 3287 deprived them of all economically viable use of their land, as required by *Nollan. Id.*

The City Council said that it enacted 3287 to protect against "adverse impacts on traffic, on-street parking, residential neighborhoods, parking facilities for adjacent commercial or business properties...." *Urgency Ordinance No. 3287,* ¶ 5. On its face, 3287 substantially advances legitimate state interests, and Appellants have made no relevant argument to the contrary. *See* note 5 and accompanying discussion, *infra.* Consequently, there has been no Fifth Amendment taking.

## TORT CLAIM

■ Appellants argue that Torrance is liable in tort for interference with the Appellants' prospective economic advantage.

Torrance responds that it is protected from tort liability through legislative immunity.[5]

### Legislative Immunity

The bankruptcy court held that California Government Code § 818.2 immunizes Torrance from damage claims for economic injuries. Findings of Fact and Conclusions of Law (filed December 19, 1991) (Conclusion of Law No. 5). Under § 818.2, legislative entities cannot "be sued in tort for injury caused by adoption of or failure to adopt an enactment, or by failure or refusal to issue or deny a permit, license or similar authorization." *Land Waste Management v. Contra Costa County Bd. of Supervisors*, 222 Cal.App.3d 950, 963, 271 Cal.Rptr. 909, 917 (1990); *see also Nunn v. State*, 35 Cal.3d 616, 621–22, 677 P.2d 846, 200 Cal.Rptr. 440, 677 P.2d 846 (1984). Consequently, under § 818.2, Torrance has legislative immunity, and the granting of summary judgment on the tort issue should be affirmed.

### PROCEDURAL DUE PROCESS

Appellants argue that Torrance violated its own charter in enacting Ordinance 3287 on an "urgency" basis because there was no emergency. Appellants also argue that the enactment of Ordinance 3287 was a quasi-judicial act (not a legislative act) requiring notice and hearing.

### 1. *Urgency*

■ The charter for the City of Torrance provides for (1) a regular enactment procedure taking about 44 days, and (2) an abbreviated "urgency" procedure which can be enacted without a waiting period. Both procedures are found in the Torrance City Charter, §§ 724 & 726 (1993).

Section 726 provides in relevant part:

An ordinance for the immediate preservation of the public peace, health or safety which contains a declaration of the facts constituting its urgency and is passed as aforesaid, may be introduced and passed at one and the same meeting and the requirement that no less than five (5) days shall intervene between the introduction and final passage shall not apply to such an ordinance.

Ordinance 3287 describes the urgency involved as follows:

It is probable that privately-owned property will be used for court purposes in the City of Torrance in the *near future*. Such property will, in all probability, not have adequate parking for such court uses, and that will result in adverse impacts on traffic, on-street parking, residential neighborhoods, parking facilities for adjacent commercial or business properties, and will result in inconvenience and aggravation to those persons attempting to use the court facilities.

\*　\*　\*　\*　\*　\*

That by reason of the findings set forth above, there exists an *immediate* threat to the public peace, health, safety, and general welfare; that the City Council hereby declares this ordinance to be an *urgency* measure for the immediate preservation of the public peace, health, safety, and general welfare.

*Urgency Ordinance No. 3287*, ¶ 5, § 1 (emphasis added).

On its face, 3287 includes "a declaration of the facts constituting its urgency." The bankruptcy court found that 3287 complied with Charter § 726's urgency provisions. Conclusion of Law No. 16. Appellants' contrary position is unsupported.

■ Appellants argue that there was no emergency. Whether a legitimate emergency actually exists is normally left to legislative discretion, and a declaration of emergency is *prima facie* evidence of emergency. *Crown Motors v. City of Redding*, 232 Cal.App.3d 173, 179–80, 283 Cal. Rptr. 356, 359–60 (1991). The only real constitutional threshold the courts have for

---

**5.** Even absent legislative immunity, Torrance argues that Appellants have failed to show one of the elements of a tort, i.e., proximate cause. Torrance argues that it could not be the proximate cause of any of the Appellants' alleged damages for at least three reasons. However, these contentions are either partially or wholly dependent on questions of fact which are not appropriately disposed of on motion for summary judgment.

evaluating such discretion is the rational basis test: there must be a rational relationship between the legislative act and its stated purpose. The bankruptcy court concluded that such a rational relationship existed with respect to Ordinance 3287. Conclusion of Law No. 21.

■■■ Ordinance 3287 requires a greater number of parking spaces for automobile-intensive courtroom uses in order to prevent traffic problems. First, the concern for traffic problems is a legitimate one within Torrance's realm of authority as a city.[6] Second, there is obviously a rational relationship between parking, traffic, and public safety and welfare.

The concerns of the City Council being immediate, and the requirements of Charter § 726 being met, Ordinance 3287 does not violate due process based on its "urgency" procedure.

### 2. Legislative vs. Judicial Acts

■■■ In *San Diego Bldg. Contractors Ass'n v. City Council*, 13 Cal.3d 205, 118 Cal.Rptr. 146, 529 P.2d 570 (1974), *appeal dismissed*, 427 U.S. 901, 96 S.Ct. 3184, 49 L.Ed.2d 1195 (1976), the California Supreme Court held that procedural due process requirements of notice and hearing apply to judicial and quasi-judicial proceedings, but not to legislative acts. *Id.*, 13 Cal.3d at 211, 118 Cal.Rptr. at 149, 529 P.2d at 573. *Building Contractors* held that the difference between legislative and judicial acts was that the former applied generally while the latter applied only to "a few people." *Id.* (citing *Bi–Metallic Inv. Co. v. State Board of Equalization*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915)); *see also Sierra Lake Reserve v. City of Rocklin*, 938 F.2d 951, 957 (9th Cir.1991),

*vacated on other grounds*, —— U.S. ——, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992) (*citing Yee v. City of Escondido*, —— U.S. ——, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (due process is satisfied when legislative acts are performed in the normal manner prescribed by law).

The bankruptcy court held as a matter of law that Ordinance 3287 was legislative in nature, and as a matter of fact that 3287 applied to all private property owners in the City of Torrance. Conclusions of Fact No. 22, Conclusions of Law Nos. 4, 15, 18 & 23) (citing California Government Code §§ 810.6 and 811.2).

Appellants admit at page 7 of their Opening Brief that "the ordinance, by its breadth and by its terms, made virtually every law office in the City of Torrance a nonconforming use." *See Appellants' Opening Brief* at 7, 9; *see also Transcript re: Motion for Summary Judgment* at 4 (Los Angeles, Cal., Oct. 8, 1991). Despite their protestations that 3287 constituted "spot zoning" or "down zoning," Appellants' admission as to the general applicability of 3287 is the same as an admission as to its general legislative nature.[7]

But even without Appellants' admission, 3287 is generally applicable on its face, and Appellants have cited no relevant authority to the contrary. Therefore, their only argument can be that 3287 has been unfairly applied.

### 3. Fair Application

■■■ Appellants allege that they alone have been injured by 3287 because it has never been applied to anyone else. But in the same breath Appellants admit that they do not have enough information to make

---

6. Even aesthetics are within a municipality's legitimate realm of authority in protecting health, safety and welfare. *Crown Motors*, 232 Cal.App.3d at 177–78, 283 Cal.Rptr. at 359 ("public health" encompassed "the wholesome condition of the community at large"). *A fortiori*, automobile traffic has a legitimate connection with public health and safety.

7. Appellants also argue that the emergency procedure precluded the Torrance Municipal Code

requirement that there be a zoning and planning study pursuant to §§ 96.1.3, 96.1.4 and 96.1.5. However, as pointed out by Torrance, 3287 was neither a change in zoning nor an emergency moratorium pursuant to California Government Code § 65858, but rather an outline of the procedure by which conditional use permits could be obtained for court-related uses.

the allegation, as indicated in the following discussion:

> KNICKERBOCKER: The city has, to our knowledge, never applied this ordinance to anyone other than Conrow—or Park Beyond the Park.

> THE COURT: Okay. How many other—on how many other occasions should it have applied it and failed to?

> \* \* \* \* \* \*

> KNICKERBOCKER: [W]e just don't have that kind of information to say that they have applied it to anybody else.

*Transcript re: Motion for Summary Judgment* at 18.

Appellants are not arguing that they have had inadequate time or cooperation with respect to discovery. Without citing any authority, Appellants argue that Torrance has the positive burden to produce evidence showing that it has fairly applied 3287. Appellants ignore the contrary authority from *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986): where the non-moving party will bear the burden of proof at trial on a dispositive issue, as with the issue of unfair application, a summary judgment motion may properly be made solely on the pleadings—even without affidavits. In response, the non-moving party must go beyond the pleadings and by affidavits, etc., designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324–325, 106 S.Ct. at 2553–54; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (opponent must show more than mere metaphysical doubt as to material facts).

Accordingly, Appellants have the burden to show unfair application, which they have failed to do. Therefore, there has been no showing of due process violation, and summary judgment is proper.

## CONCLUSION

Torrance has shown absence of material issues of fact and entitlement to judgment as a matter of law. Accordingly, we affirm.